MANDELBAUM SALSBURG, P.C.
3 Becker Farm Road
Roseland, NJ 07068
Ph.: 973-736-4600
Fax: 973-736-4670
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA RINALDI,<br><br>  Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL WASTE MANAGEMENT ASSOCIATES, LLC and FRANK RUSSOMANNO,<br><br>  Defendants. | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Barbara Rinaldi ("**Rinaldi**" or "**Plaintiff**"), residing at 87 Reynolds Avenue, Whippany, New Jersey, by way of Complaint against Defendants Environmental Waste Management Associates, LLC ("**EWMA**", the "**Company**" or the "**Employer**") and Frank Russomanno ("**Russomanno**"), alleges and says:

### INTRODUCTION

1. This lawsuit is brought by a former long term, senior executive of EWMA who was subjected to a hostile work environment at the Company. Moreover, after twenty-five (25) years of employment, Plaintiff was denied reasonable accommodations under the New Jersey Law Against Discrimination, N.J.S.A.10:5-1 et seq. ("**NJLAD**"), retaliated against and wrongfully discharged in violation of the Family Medical Leave Act, 29 U.S.C. 2601 et seq. ("**FMLA**") and the NJLAD, and fired in retaliation for filing a workers' compensation claim and

whistleblowing activities protected under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("**CEPA**").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under the FMLA, 29 U.S.C. §2601 et seq. This Court also has supplemental jurisdiction over state and/or common law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper pursuant to 28 U.S.C. §1391 as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district and Defendants are subject to personal jurisdiction here.

## BACKGROUND
### (Identification of the Parties)

4. Menlo Acquisition Corp. ("Menlo") is a holding company and EWMA and Integrated Analytical Labs ("IAL") are wholly owned subsidiaries of Menlo.

5. EWMA is an environmental consulting and remediation company based in Parsippany, New Jersey.

6. Rinaldi was employed by EWMA for approximately twenty-five (25) years as its manager of the accounting department and controller.

7. At all relevant times Russomanno was the chief financial officer for EWMA and the person to whom Rinaldi directly reported.

### The Hostile Work Environment

8. During her employment, Russomanno, Rinaldi's direct supervisor, created a pervasive, hostile work environment for Rinaldi based on her gender.

9. Russomanno repeatedly sent Rinaldi inappropriate and offensive e-mails that he would not have sent to male employees.

2

4835-9058-0649, v. 1

10. By way of example, but not limitation, knowing that Rinaldi's life partner worked in the Essex County Sheriff's Office, Russomanno wrote to Rinaldi stating that he "hates Essex County," "hates sheriffs officers," "hates baliffs" (sp)… and most of all … I hate you."

11. In another e-mail Russomanno wrote to Rinaldi stating "I never liked you" and in yet another he wrote "I don't like Barbara – she's not my friend."

12. Russomanno also wrote to Rinaldi that the Company's accountant cancelled a meeting at which both Russomanno and Rinaldi were to attend, indicating "Kevin called me. Said real reason he cancelled was because you were coming. He doesn't like you for some reason. I can't understand why!"

13. Russomanno also made various comments to, or about, Rinaldi, including repeatedly calling her a "slacker."

14. Russomanno's repeated and inappropriate behavior directed at Rinaldi permeated the workplace and made EWMA a hostile and offensive place to work.

15. Other women also complained about Russomanno's inappropriate treatment of them, including one who wrote that she "… truly fail[ed] to understand what [she] did to deserve these 'take no prisoners' confrontations with him" and that she "came away from those situations with the view that I am perceived as not having any value … I no longer believe that I will ever figure him out and after Friday's meeting have no real will to continue to try. I guess in Frank's case, it is simple … when you are a Hammer you treat everyone like a Nail …"

16. Another EWMA employee wrote to its female general counsel complaining about Russomanno, explaining "[t]he situation was getting worse in recent months. As a result, it is hampering our abilities to do our jobs effectively and morale is extremely poor. We have all spoken to FR about this, but he has ignored our deteriorating situation. So far, it has resulted in

4835-9058-0649, v. 1

two employees quitting in recent months ..." (emphasis in original). The letter concludes by stating "[w]e therefore would like to discuss the situation with you. We would appreciate a few minutes from your busy schedule and at a time when Russomanno is generally not yet in the office (i.e. mornings)."

### Rinaldi's Injuries and her Workers' Compensation Claim

17. Rinaldi suffered significant injuries from an accident at work on July 11, 2018, including broken bones in her foot, as well as injuries to her shoulders, neck and spine.

18. Thereafter, Rinaldi filed a workers' compensation claim and her recovery was delayed due to the inattentiveness to her matter by the workers' compensation insurance carrier.

19. While Rinaldi was recuperating, she continued to handle her job duties remotely.

20. By e-mail, dated November 9, 2018, Rinaldi wrote to EWMA, forwarding a doctor's note that indicated she should remain working from home until December 24, 2018. Rinaldi indicated that the date was tentative and that, if ongoing treatment did not improve her current condition, surgery might be inevitable.

21. On November 20, 2018, Russomanno, wrote to Rinaldi asking if she would be able to handle all of her job duties through year end and she confirmed that she ["did] not foresee any issues ..."

22. By e-mail dated December 5, 2018, Russomanno wrote to Rinaldi indicating, among other things, that if she was unable to return to the office by December 24, the Company would like to hear from her doctor about what in-office accommodations might be available.

23. By e-mail, dated December 23, 2018, Rinaldi wrote to Russomanno, indicating that her spine doctor wanted her to continue to work from home until February 25, 2019 and that

> I have been accommodating the Company by working from home, in pain and discomfort, in dedication to my position. Even on

4

> my vacation days, of which I was required to be used by year-end, I continue to answer emails, phone calls, and complete work in a timely manner to ensure continuity within the Company. As a twenty-five year employee of our ESOP company, I have a vested interest in the success of this Company.
>
> I am sorry that you feel this is a hardship to the Company. However, no one has suffered a greater hardship than I have. I look forward to a full recovery and my return to the office.

24. By e-mail, dated January 7, 2019, Russomanno informed Rinaldi that the Company had permitted her to work from home all of those months, "appreciated [her] responsiveness and professionalism during [her] vacation" but, because she had indicated she was still experiencing pain and discomfort, told her she should devote all of her energies to her recovery.

### Rinaldi's FMLA Leave and EWMA's Failure to Provide a Reasonable Accommodation

25. Russomanno's e-mail asked Rinaldi to let him know by January 11, 2019 whether she was interested in "a protected medical leave of absence under the FMLA" because her doctor was suggesting she needed to remain out of the office until the end of February.

26. Thereafter, there were communications between counsel for both parties and, during that time, Rinaldi continued to work from home and perform all of her job duties.

27. By e-mail, dated February 4, 2019, Russomanno wrote to Rinaldi, mischaracterized her working from home as "light duty", and informed her that EWMA "… will not have any light duty available for [her] beginning February 11, 2019."

28. In that same e-mail, Russomanno, indicated that if Rinaldi was unable to return to the office "on a full-time basis" as of February 11, 2019, EWMA would be placing her on a "FMLA-protected leave of absence."

29. At or about that time, EWMA retained Kevin Wall ("**Wall**") as an accountant and, upon information and belief, Wall was given certain of Rinaldi's job duties.

30. Upon further information and belief, Wall was not retained on a temporary basis but was retained on a full-time, permanent basis to replace Rinaldi. Moreover, although Wall was allegedly retained on a "non-employee" basis, in fact he was an employee and should have been treated as such for payroll purposes.

31. As of that time, Rinaldi's spine doctor wanted her to work from home until February 25, 2019 and her foot and ankle orthopedist indicated she needed to continue to work from home until March 4, 2019.

32. EWMA placed Rinaldi on FMLA leave starting on or about February 11, 2019.

33. While on FMLA leave, Rinaldi's pay stopped, and she was required to remit payment every pay period to cover the employee portion of her health insurance.

34. By letter, dated February 11, 2019, EWMA notified Rinaldi she was required to submit monthly status reports to EWMA from her doctors and present a fitness-for-duty certification prior to returning to work. These requirements are confirmed in a February 5, 2019 letter to Rinaldi from Madeline Gonnella, Payroll and Benefit Administrator for EWMA.

35. By letter, dated March 11, 2019, the Company's attorney wrote to Rinaldi's attorney indicating that the Company discovered a letter from Rinaldi's doctor, Stephanie Adam ("**Dr. Adam**"), in which Dr. Adam noted that Rinaldi had no restrictions or limitations and was able to return to work as of February 11, 2019.

36. In the March 11, 2019 letter, EWMA's attorney noted that Rinaldi had not made arrangements to return to work on that date, as per her doctor's note and, therefore, assumed she abandoned her job.

37. The attorney concluded by indicating that, if EWMA is mistaken, please clarify immediately.

38. The Company apparently was looking for an excuse not to take Rinaldi back to work and to fire her because it knew prior to the March 11, 2019 letter that Rinaldi had another doctor who was treating her for spine injuries and that her spine doctor had not released her to return to work as of that time.

39. The following day, Rinaldi's attorney wrote EWMA's counsel and noted that Rinaldi had not been released yet by her spine doctor, Dr. Ilya Kupershtein ("**Dr. Kupershtein**") and that Rinaldi had an upcoming appointment with Dr. Kupershtein on March 11, 2019.

40. On March 11, 2019 Dr. Kupershtein wrote a letter to EWMA indicating that Rinaldi could return to work on March 20, 2019 but that until April 3, 2019 (the date of her next doctor's appointment) she had the following restrictions:

> She may work in the office 3 days per week, only 4 hours per day and work from home 2 days per week for 6 hours per day. She is unable to sit for long period of time and rotate her neck without pain and is unable to drive herself and although her husband agrees to bring her to work, she could potentially require occasional assistance with transportation. Please allow her to take frequent breaks as needed. Also, please accommodate her with an Ergonomic workstation as well as a sit/stand desk if possible.

41. By e-mail, dated March 19, 2019, Rinaldi wrote to Russomanno, indicating that she would return to work the next day as per Dr. Kupershtein's note.

42. In that same e-mail Rinaldi also wrote that, in anticipation of returning to work on March 20, 2019, she attempted to access the Company's computer and discovered she was denied access and that her name was eliminated from all group e-mails.

43. The same day Russomanno sent an e-mail to Rinaldi, advising her that EWMA told the workers' compensation carrier a week earlier that it "could not accommodate the restrictions they outlined," but no explanation why was given to Rinaldi.

44. Russomanno also indicated in his e-mail that "[r]egarding your access, while you are on leave we temporarily restricted access to the company computer system."

45. Considering that Rinaldi had performed all of her duties from home for months and that her doctor was releasing her as of March 20, 2019 to work part of the week in the office, there was no legitimate reason for EWMA to refuse to accommodate Rinaldi as requested or to deny her access to EWMA's computer system especially considering she had been an EWMA employee for approximately twenty-five (25) years at that time.

46. By e-mail, dated April 30, 2019, Rinaldi forwarded to Russomanno a note from her orthopedic doctor confirming that Rinaldi could return to work on a full-time basis on May 1, 2019, a date that coincided with the end of Rinaldi's FMLA entitlement. The note indicated that Rinaldi should not lift over 10 pounds and should do no overhead reaching. Finally, it indicated that Rinaldi would be revaluated on May 13, 2019.

47. By e-mail of the same date, however, Russomanno indicated that "… we have made arrangements for others to cover your duties in your absence" and that EWMA needed more than 24 hours advance notice before the Company could have her return to work.

48. Russomanno indicated in his e-mail that Rinaldi should "plan to report to the office on Monday, May 6 at 11:00 a.m," but no explanation was given concerning the strange start time.

49. On Monday, May 6, 2019 Rinaldi reported to work only to be told that she was fired.

8

4835-9058-0649, v. 1

50. Defendants' wrongful termination of Rinaldi was in retaliation for exercising her rights under the FMLA and the disability laws, for filing a workers' compensation claim and/or her whistleblowing activities while she was employed by EWMA.

51. During her employment Rinaldi complained to Russomanno and/or at times to Don Richardson, EWMA President, Michael Leftin and Danielle Cervino, Esq., EWMA's general counsel, that Russomanno's expenses were high and did not appear to be company related yet he was not issued a 1099 for these payments, he forged signatures on checks issued by a related company Isotec, caused Menlo and/or Menlo's employee stock ownership plan ("ESOP"), for which Russomanno was the Plan Administrator, to make a loan to an executive without approval, created a hostile work environment for her and other women, and that there were issues concerning the administration of the ESOP.

## FIRST COUNT
## (FMLA Violations)

52. Rinaldi was an employee covered by the FMLA having worked the requisite number of hours in the prior twelve (12) months and EWMA was an employer as defined in the FMLA.

53. During the time Rinaldi was on FMLA leave, Defendants decided not to hold her job position, or an equivalent one, for her.

54. Defendants hired an accountant while Rinaldi was on her approved FMLA leave.

55. The person hired received certain of Rinaldi's job duties and was hired as a full-time, permanent employee.

56. By failing to hold her job, or an equivalent one, EWMA violated, inter alia, the FMLA.

57. Moreover, Defendants retaliated against Rinaldi by not holding her job or an equivalent one and by terminating her for exercising her rights under the FMLA.

58. As a direct and proximate result thereof, Rinaldi suffered, and continues to suffer, substantial damages as well as emotional distress and mental anguish.

59. The aforesaid conduct of Defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

## SECOND COUNT
### (Disability Discrimination and Retaliation Under the NJLAD)

60. Plaintiff repeats and realleges all of her previous allegations as if same were set forth herein at length.

61. Rinaldi requested various reasonable accommodations including, but not limited to, returning to work in the office temporarily on a part-time basis and working the balance of the week from home, and later requesting that she return full-time to the office but with certain light duty restrictions.

62. Defendants refused to accommodate Rinaldi's requests or engage in the interactive process with her.

63. As a direct and proximate result thereof, Rinaldi lost compensation and benefits including, but not limited to, during the period from on or about March 20, 2019 to in or about May 6, 2019, when she was released to return to work but was denied same.

64. Rinaldi was also discriminated and retaliated against because of her disability in violation of the NJLAD when she was terminated on or about May 6, 2019.

65. The aforesaid conduct of Defendants was willful, wanton, malicious and in reckless disregard of Rinaldi's rights.

## THIRD COUNT
### (Workers' Compensation Retaliation)

66. Plaintiff repeats and realleges all of her previous allegations as if same were set forth herein at length.

67. Defendants discriminated against Rinaldi and discharged her from EWMA in retaliation for, inter alia, filing a workers' compensation claim in violation of N.J.S.A. 34:15-39.1 et seq.

68. As a direct and proximate result thereof, Rinaldi suffered substantial damages including emotional distress and mental anguish.

69. The aforesaid conduct of Defendants was willful, wanton, malicious and in reckless disregard of Rinaldi's rights.

## FOURTH COUNT
### (CEPA)

70. Plaintiff repeats and realleges all of her previous allegations as if same were set forth herein at length.

71. Rinaldi objected to management and/or refused to participate in various practices at EWMA including, but not necessarily limited to, paying Russomanno's personal expenses through EWMA without the Company issuing him a 1099 for that compensation, forging signatures on checks issued by a related company, EWMA (or ESOP?) making a loan to an executive without approval, creating a hostile environment based on gender and issues concerning the administration of EWMA's ESOP plan.

72. As a result of said whistleblowing activities, Defendants retaliated against Rinaldi by, inter alia, terminating her employment with EWMA after twenty-five (25) years of employment.

11

73. As a direct and proximate result thereof, Rinaldi has suffered, and continues to suffer, substantial damages including emotional distress and mental anguish.

74. The aforesaid conduct of Defendants was willful, wanton, malicious and in reckless disregard of Rinaldi's rights.

## FIFTH COUNT
### (Common Law Wrongful Discharge in Violation of Public Policy)

75. Plaintiff repeats and realleges all of her previous allegations as if same were set forth herein at length.

76. Rinaldi objected to and/or refused to participate in various practices of Defendants, as aforesaid, in violation of rules, regulations, statutes and/or public policy including, but not necessarily limited to, the tax laws, ERISA and discrimination and harassment laws.

77. As a result of Rinaldi's whistleblowing activities, Defendants retaliated against her by firing after twenty-five (25) years of service.

78. As a direct and proximate result thereof, Rinaldi has suffered, and continues to suffer, substantial damages including emotional distress and mental anguish.

79. The aforesaid conduct of Defendants was willful, wanton, malicious and in reckless disregard of Rinaldi's rights.

## SIXTH COUNT
### (Breach of Contract)

80. Plaintiff repeats and realleges all of her previous allegations as if same were set forth herein at length.

81. Rinaldi requested to utilize approximately twenty (20) days of accrued and unused vacation in 2018, but EWMA denied same.

82. Rinaldi earned pro-rated vacation time in 2019 in accordance with EWMA's vacation policy, but was not paid for any of her 2018 or 2019 vacation days when she was terminated.

83. As a direct and proximate result thereof, Plaintiff has been damaged.

### SEVENTH COUNT
### (Hostile Work Environment Under the NJLAD)

84. The aforesaid conduct by Russomanno created a hostile work environment at EWMA for Rinaldi.

85. The aforesaid conduct was directed at Rinaldi and other women based upon their gender.

86. Russomanno treated other women at EWMA similarly and would he not have acted towards them the way he did if they were men.

87. Rinaldi and other women complained about said conduct to members of EWMA's upper management, and objected to it, but to no avail.

88. Upper management of EWMA participated in said wrongful conduct and/or were willfully indifferent to it.

89. As a direct and proximate result thereof, Rinaldi suffered emotional distress and mental anguish, and was otherwise damaged.

90. The aforesaid conduct of Defendants was willful, wanton, malicious and/or in reckless disregard of Rinaldi's rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Barbara Rinaldi demands judgment on all of the above counts in the Complaint against Defendants, jointly, severally and/or in the alternative, (other than the Sixth and Seventh Counts solely against EWMA) as follows:

13

4835-9058-0649, v. 1

    A.    Compensatory damages;

    B.    Punitive damages (except on Sixth Count);

    C.    Damages for emotional distress and mental anguish (except on Sixth Count);

    D.    Interest;

    E.    Attorneys' fees;

    F.    Costs of suit; and

    G.    Such further relief as this Court deems just and equitable.

MANDELBAUM SALSBURG, P.C.
Attorneys for Plaintiff

By: /s/Steven I. Adler
STEVEN I. ADLER

Dated: January 16, 2020

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

MANDELBAUM SALSBURG, P.C.
Attorneys for Plaintiff

By: /s/Steven I. Adler
STEVEN I. ADLER

Dated: January 16, 2020